**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  09-cv-02986-REB-BNB

LUCRECIA CARPIO HOLMES,

     Plaintiff,

v.

COLORADO COALITION FOR THE HOMELESS LONG TERM DISABILITY PLAN,

     Defendant.

---

**ORDER**

---

**Blackburn, J.**

This matter is before me on the following: (1) **Defendant's Brief on the Administrative Record** [#16][1]; and (2) **Plaintiff's Brief on the Administrative Record** [#17], both filed September 29, 2010. Both parties filed responses [#20 & #21], and the defendant filed a reply [#26]. I construe and treat the parties' briefs as motions for summary judgment. I grant the defendant's motion and deny the plaintiff's motion.

### I.  JURISDICTION

I have jurisdiction over this case under 18 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1) and (f) (ERISA).

### II.  STANDARD OF REVIEW

This is a case under § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 - 1461. The key issue in this case is a determination of whether the plaintiff's claim is barred based on her failure to exhaust her administrative remedies. The defendant seeks dismissal of this case based on the plaintiff's failure to exhaust her

---

[1] "[#16]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

administrative remedies. There are no pending motions in this case. Therefore, the applicability of the standards relevant to a motion to dismiss or motion for summary judgment is not facially obvious. However, the parties address the exhaustion issue in detail in their briefs. The parties rely on information contained in a voluminous administrative record. Because the defendant seeks dismissal of the plaintiff's claim and relies on the administrative record to substantiate its claim, I conclude that the standards applicable to a motion for summary judgment are the standards relevant to a resolution of this case.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[2] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The relevant facts are not in dispute. Those facts are established in the administrative record [#11]. The key issues addressed in the briefs of the parties are issues of law. Once the issues of law are resolved, the court can determine which of the parties is entitled to judgment as a matter of law.

### III. FACTS

The plaintiff, Lucrecia Holmes, appeals the defendant's denial of long term disability benefits. The policy under which Ms. Holmes seeks benefits is an employee welfare benefit plan that is governed by ERISA. Ms. Holmes was insured under the policy in connection with her employment by the Colorado Coalition for the Homeless (CCH). I refer to the policy as the Group Policy.

Union Security Insurance Company is the claims administrator for the Group Policy. Under the Group Policy, CCH delegates to Union Security (formerly known as Fortis) discretionary and binding authority to review and determine claims:

**Authority**

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

> The policyholder delegates to us and agrees that we have the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the policy. All determinations and interpretations made by us are conclusive and binding on all parties.

US1376.[3]

The Group Policy contains the following Review Procedure in the event of a claim denial:

> **Review Procedure**
>
> You must request, in writing, a review of a denial of your claim within 180 days after you receive notice of denial.
> . . .
> We will review your claim after receiving your request and send you a notice of our decision within 45 days after we receive your request, or within 90 days if special circumstances require an extension. We will state the reasons for our decision and refer you to the relevant portions of the policy. We will also advise you of your further appeal rights, if any.

US1377.

It appears that Ms. Holmes filed a claim for long term disability benefits sometime in 2005.[4] Between March 21, 2005, and May 18, 2005, Union Security wrote three letters to Ms. Holmes advising her of the status of its review of her benefit claim. In each letter, Union Security explained its need for additional time to obtain requested information so it could render a benefits decision. US1809-US1810; US1694-US1695; US1390-US1391. On May 27, 2005, Union Security advised Ms. Holmes by letter that her benefit claim was denied because she failed to prove she was disabled under the terms of the Group Policy. US1337-US1345.

The May 27, 2005, letter includes a section describing appeal procedures under the policy.

> **APPEAL PROCEDURES**
>
> Enclosed please find a copy of the **Fortis Benefits Insurance Company Group Claim Denial Review Procedure**. This document describes the plan's review procedures, including your rights with respect to our administrative appeals process, and also describes your right to bring a lawsuit under Section 502(a) of

---

[3] I cite the administrative record [#11] by bates page number, e.g., US000001.

[4] The parties do not cite the date on which Ms. Holmes filed her claim for benefits, and the date of her claim is not material to this case.

3

[ERISA], if your claim is governed by this Act.

US001339.  The letter describes in detail the documentation that must be provided in an appeal. Included with the letter is a two page document which describes the Group Claim Denial Review Procedure applicable under the Group Policy.  US001341 - 001342.  This document describes clearly a two level appeal process.  US001341.  The document states also that if a claim is denied as part of the second review on appeal, "you have the right to bring a civil action under section 502(a)" of ERISA.  US001342.

On November 21, 2005, Ms. Holmes, through counsel, requested a first level review. US001288 - 1332.  Between December 9, 2005, and March 22, 2006, Union Security gave five written updates to Ms. Holmes' counsel.  In those letters, Union Security explained the status of the first level review proceedings, Union Security's requests for additional information, the receipt and review of the plaintiff's supplemental information, and Union Security's need for additional time to complete the first level review. US1284, US1271-US1272, US1255, US1253, US219.

On April 7, 2006, Union Security advised Ms. Holmes' counsel that the first level review was complete and that the denial of benefits was affirmed.  US000203 - 000214. This letter included a copy of the two page document which describes the Group Claim Denial Review Procedure applicable under the Group Policy.  US000210 - 000211.  This document explains the procedure to request a second level review and states that if a claim is denied as part of the second review on appeal, "you have the right to bring a civil action under section 502(a)" of ERISA.  This two page document contains the same information in the same format as the document included with the May 27, 2005, letter in which Union Security stated its initial denial of benefits.  US001341 - 001342.

It is undisputed that Ms. Holmes never filed a request for a second level review.  Her initial complaint in this case was filed on April 28, 2008.  Additional facts are discussed below.

4

## IV.  ANALYSIS

The defendant argues that Ms. Homes' ERISA claim is barred because she failed to exhaust her administrative remedies by seeking a second level review.  A second level review is available to her under the Group Policy, as detailed in the two page description of the Group Claim Denial Review Procedure.  That document was provided to Ms. Holmes with both of the letters from Union Security in which Union Security denied benefits to Ms. Holmes.

ERISA includes a requirement that a claimant exhaust her administrative remedies.

> Under ERISA, a plaintiff must exhaust her administrative remedies before seeking judicial relief. *See McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1263 (10th Cir.1998). This requirement "derives from the exhaustion doctrine permeating all judicial review of administrative agency action, and aligns with ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees." *Id*. (citation omitted). Any other procedure would permit "premature judicial interference" and "would impede those internal processes which result in a completed record of decision making for a court to review." *Id*. "The doctrine is necessary to keep from turning every ERISA action, literally, into a federal case." *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir.1999) (quotation omitted). Generally, a district court may waive the exhaustion requirement only "where resort to administrative remedies would be clearly useless." *McGraw*, 137 F.3d at 1264 (internal quotation marks omitted).

*Lewis v. U.F.C.W. Dist. Union Local Two & Employers Pension Fund*, 273 F. App'x 765, 767-68 (10th Cir. 2008). Absent a showing that resort to administrative remedies would be clearly useless, an ERISA plaintiff's failure to exhaust her administrative remedies bars a civil action under ERISA.  *See, e.g., Getting v. Fortis Benefits Ins. Co.*, 5 F. App'x 833, 834 (10th Cir. 2001); *Cytrynbaum v. Employee Ret. Plan of Amoco Corp. & Participating Companies*, 338 F. Supp. 2d 1187, 1193 (D. Colo. 2004).  Ms. Holmes presents two arguments supporting her contention that she should be treated as having exhausted her administrative remedies.

### A.  Untimely Decision

First, Ms. Holmes contends that the defendant did not issue a timely response to Ms. Holmes' request for first level review.  If that is true, then Ms. Holmes may be deemed to have exhausted her administrative remedies fully. *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 798 (10th

Cir. 2010) (citing 29 C.F.R. § 2560.503-1(i)(1)(i) (2002)).  The letter initiating Ms. Holmes' request for first level of review is dated November 21, 2005, and was received by the defendant on November 28, 2005.  US001288.  Union Security issued its decision on April 7, 2006, 136 days later.  US000203.

Ms. Holmes relies on the requirements of 29 C.F.R. § 2560.503-1(i)(1)(I), which provides:

> (i) Except as provided in paragraphs (i)(1)(ii), (i)(2), and (i)(3) of this section, the plan administrator shall notify a claimant in accordance with paragraph (j) of this section of the plan's benefit determination on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 60-day period.  In no event shall such extension exceed a period of 60 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.

Union Security responds to this argument by noting that Ms. Holmes was the cause of a substantial portion of the delay.  Ms. Holmes request for a first level review was dated November 21, 2005.  On December 9, 2005, Union Security advised Ms. Holmes that it was referring her file to a physician for review.  US001284.  On January 5, 2006, Union Security notified Ms. Holmes of special circumstances requiring extra time to complete the review, and asked Ms. Holmes' counsel to provide certain medical records necessary for the review.  US001271 - US001272.  Union Security received no response from Ms. Holmes or her counsel.  On February 2, 2006, Union Security again notified Ms. Holmes' counsel of the need for additional records.  US001255.  Again, Union Security received no response.  On February 24, 2006, Union Security notified Ms. Holmes' counsel, for the third time, of the need for additional records.  US001253.  In its February 24, 2006, letter, Union Security said it expects to make a determination no later than April 10, 2006.  US001253.

On March 13, 2006, Ms. Holmes' counsel submitted nearly 1,000 pages of medical

6

records. US000220 - US001251. In counsel's letter submitting the records, counsel said "per your letter I will expect a final determination no later than April 10, 2006." US000220. Union Security issued its decision on the first level review on April 7, 2006, less than 30 days after receiving the medical records requested from Ms. Holmes. US000203 - 000214.

      The record demonstrates that 67 days of the time consumed between Ms. Holmes' request for a first level review and Union Security's decision on the first level of review is attributable to Ms. Holmes' delay in providing medical records to Union Security. This delay constitutes a circumstance beyond the control of Union Security and reasonably within the control of Ms. Holmes. No doubt, Ms. Holmes needed a reasonable period of time to obtain and provide these records. In the context of this case, and considering the deadline Ms. Holmes now seeks to enforce, 67 days is well beyond a reasonable period of time. Ultimately, Union Security's decision was issued 15 days after Union Security received the 1,000 pages of medical records it needed to complete its review. Union Security's decision was issued 16 days beyond the 120 day deadline established in 29 C.F.R. § 2560.503-1(i)(1)(i).

      Given these circumstances, I conclude that Ms. Holmes forfeited[5] her right to enforce the deadline as to her first level review proceedings. Union Security routinely kept Ms. Holmes updated on the status of the first level review proceedings and promptly alerted Ms. Holmes to the need for additional medical records. Ms. Holmes' delay in providing those records consumed more than half of the 120 day review period established in 29 C.F.R. § 2560.503-1(i)(1)(i). Once Union Security had the records it needed, Union Security issued a decision promptly. The bottom line is this: An insured seeking a review subject to the time limitations of 29 C.F.R. § 2560.503-1(i)(1)(i) cannot trigger a violation of this time limitation by causing an unreasonable delay in the review procedures. Given the circumstances described above, Ms.

---

[5] Typically, waiver is accomplished by intent, while forfeiture comes about through neglect. **United States v. Zubia-Torres**, 550 F.3d 1202, 1205 (10th Cir. 2008). Generally, waiver is the intentional relinquishment or abandonment of a known right, while forfeiture is the failure to make the timely assertion of a right. **United States v. Olano**, 507 U.S. 725, 733 (1993). In this case, the delay created by Ms. Holmes is analogous to a failure to make a timely assertion of her right to a decision within 120 days.

7

Holmes was responsible for a substantial, unreasonable delay in her review proceedings. That delay is not properly attributable to Union Security. Therefore, I conclude that Union Security's decision on the first level review, issued on April 7, 2006, was timely.

In the context of Ms. Holmes' case, an observation of the United States Court of Appeals for the Eleventh Circuit is apt:

> [I]t makes little sense to excuse plaintiffs from the exhaustion requirement where an employer is technically noncompliant with ERISA's procedural requirements but, as the district court determined in this case, the plaintiffs still had a fair and reasonable opportunity to pursue a claim through an administrative scheme prior to filing suit in federal court. Therefore, if a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit.

***Perrino v. S. Bell Tel. & Tel. Co.***, 209 F.3d 1309, 1318 (11th Cir. 2000). In this case, Ms. Holmes had ample information about the administrative scheme available to her to challenge a denial of benefits. On the first level of review, Ms. Holmes had a reasonable opportunity to pursue her claim through that scheme. The delay in the issuance of Union Security's ultimate decision did not make Ms. Holmes' first level administrative review unfair or unreasonable.

### B.  Statement of Review Procedures

Second, Ms. Holmes contends that the summary plan description applicable to the Group Policy provides for a one level review procedure and she complied with that one level procedure. That compliance, she contends, constitutes complete exhaustion of her administrative remedies.

The summary plan description provides a description of the procedure for an insured to seek review of a denial of a claim.

> [Y]ou must request, in writing, a review of a denial of your claim within 180 days after you receive notice of denial. . . . We will review your claim after receiving a request and send you a notice of our decision within 45 days after we receive your request, or within 90 days if special circumstances require an extension. We will state the reasons for our decision and refer you to the relevant conditions of the policy. We will also advise you of your further appeal rights, if any.

US000051.

Ms. Holmes notes that ERISA includes requirements concerning the information that

must be included in a summary plan description.

> [T]he summary plan description shall contain the following information: . . . the procedures to be followed in presenting claims for benefits under the plan including . . . the remedies available under the plan for the redress of claims which are denied in whole or in part. . . .

29 USC § 1022(a) & (b). The provisions of 29 U.S.C. § 1022(b) contain the same requirement. A summary plan description must include a description of "the remedies available under the plan for the redress of claims which are denied in whole or in part."

Given these circumstances, Ms. Holmes asserts, she must be seen as having exhausted her administrative remedies.

> (l)  In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l). I disagree.

In *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 (9th Cir. 2008), the United States Court of Appeals for the Ninth Circuit examined a similar situation. The summary plan description in *Vaught* provided that a description of the plan's appeal procedures would be included in the notices denying benefits under the plan. *Id*. The plaintiff in *Vaught* received a denial of benefits which included a statement of internal review procedures applicable when a plan beneficiary sought to appeal a denial of benefits. *Id*. The *Vaught* court concluded that the provision of the summary plan description generally describing the review procedures, and stating that a description of procedures would be provided with a notice of denial of benefits, effectively incorporated into the summary plan description the internal review procedures detailed in the notice of denial of benefits. *Id*.

The summary plan description for Ms. Holmes' Group Plan provides the basic outline of the procedure for submitting a claim and a basic outline of the procedure to seek review when a claim for benefits is denied. In addition, the summary plan description notifies plan participants

that additional levels of review, beyond the first level of review, may be available.   If additional review is available, the summary plan description provides, the plan participant will be advised of their additional appeal rights when they receive a notice that their initial appeal has been denied.  As in *Vaught*, the summary plan description incorporated the description of second level appeal rights provided to Ms. Holmes when she received notice that her first level appeal was denied.  This is sufficient to comply with ERISA and the applicable regulations.  Ms. Holmes' duty to exhaust her administrative remedies is not excused because the provisions of the summary plan description and the provisions of the notices of her appeal rights are inadequate.

## V.  CONCLUSION & ORDERS

The undisputed facts in the record demonstrate that Ms. Holmes did not pursue the second level of review available under the Group Policy.  Thus, Ms. Holmes did not exhaust her administrative remedies under the Group Policy.  Ms. Holmes' failure to exhaust is not excused based on delay in the issuance of Union Security's decision at the first level of review or based on inadequate notice to Ms. Holmes' of the two level review procedure available to her under the Group Policy.  Ms. Holmes' ERISA claim in this case is barred based on her failure to exhaust her administrative remedies.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendant's Brief on the Administrative Record** [#16] filed September 29, 2010, construed as a motion for summary judgment, is **GRANTED**;

2.  That the **Plaintiff's Brief on the Administrative Record** [#17] filed September 29, 2010, construed as a motion for summary judgment, is **DENIED**;

3.  That the ERISA claim asserted by the plaintiff in her complaint [#1-1] is **DISMISSED** with prejudice;

4.  That **JUDGMENT SHALL ENTER** in favor the defendant, Colorado Coalition for the Homeless Long Term Disability Plan, against the plaintiff, Lucrecia Carpio Holmes;

     5.  That the defendant is **AWARDED** its costs to be taxed by the clerk of the court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.; and

     6.  That this case is **CLOSED**.

Dated March 27, 2013, at Denver, Colorado.

                                                  **BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge